**Dr. Saeid B. AMINI, Plaintiff,**

v.

**CASE WESTERN RESERVE UNIVERSITY, et al., Defendants.**

No. 1:97–CV–1738.

United States District Court, N.D. Ohio, Eastern Division.

June 4, 1998.

Kevin Thomas Roberts, Cleveland, OH, for Plaintiff.

Joel A. Makee, David H. Wallace, Peter M. Poulos, Timothy J. Duff, Kelley, McCann & Livingstone, Cleveland, OH, for Defendants.

## OPINION AND ORDER

GWIN, District Judge.

On April 13, 1998, Defendant Case Western Reserve University ("CWRU") filed a motion for summary judgment [Doc. 30]. In its motion, Defendant Case Western seeks summary judgment as to Plaintiff Dr. Saeid B. Amini's claims of employment discrimination. Plaintiff Dr. Amini says Defendant Case Western discriminated against him with regard to employment based upon national origin and religion and in violation of Title

VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*[1]

In reviewing Defendant Case Western's motion for judgment, the Court examines whether Plaintiff Dr. Amini shows material issues of fact such that would support judgment in his favor. The Court reviews whether Amini shows circumstantial evidence of discrimination that defeats summary judgment. For the reasons which follow, the Court denies the defendant's motion for summary judgment.

### I

Plaintiff Dr. Saeid B. Amini, an Iranian-born Muslim, makes claim against Defendant Case Western for employment discrimination based upon national origin and religion. Case Western employed Amini as a tenure track assistant professor in the Department of Epidemiology and Biostatistics ("EPBI") within the School of Medicine. Under Case Western's policies, the university determines tenure after nine years with pre-tenure review in both the third and sixth year.

In 1993, Case Western promoted Plaintiff Dr. Amini to the position of associate professor. At the same time, Case Western gave plaintiff his third year pre-tenure peer review. While largely positive, this review made suggestions for improvement.

Also in 1993, Defendant Case Western appointed Dr. Alfred Rimm chairman of the Department of Epidemiology and Biostatistics. Plaintiff says Rimm discriminated against him because of plaintiff's religion and national origin. Plaintiff Amini says this discrimination stopped him from obtaining tenure.

Typically, those faculty members on a pre-tenure track receive a sixth year pre-tenure peer review in addition to the third year review. Both the sixth year and the third year review afford tenure applicants an opportunity to correct perceived deficiencies in their performance.

Defendant Case Western did not give Plaintiff Dr. Amini a timely sixth year pre-tenure review. Defendant failed to afford this because Dr. Rimm failed to notify the department that Amini was due for his sixth year review. Amini complained about this. As a result, Case Western's Faculty Senate Grievance Panel found that Amini should receive a proper review.

In the 1995–1996 academic year, Defendant Case Western first considered Amini for tenure. After the department's Committee on Appointments, Promotion and Tenure recommended tenure, the Medical School committee on appointments recommended that tenure be denied. Plaintiff Dr. Amini appealed.[2] The appeal was denied and Defendant Case Western did not give Dr. Amini tenure in the 1995–96 year.

In April 1996, plaintiff requested a second tenure review. His department committee on appointments recommended tenure, but the School of Medicine's committee on appointments voted against tenure. Rimm offered Amini a terminal appointment for the 1996–1997 academic year. Because of irregularities in the 1996–97 terminal appointment, Defendant Case Western gave Dr. Amini another appointment for the 1997–98 academic year.

During the 1997–98 academic year, Plaintiff Dr. Amini made a third application for tenure. Defendant Case Western denied this third application for tenure.

Plaintiff Amini says Defendant Case Western discriminated against him and that this discrimination caused him to not receive tenure. Amini lays principle blame with Dr. Rimm. He says Rimm discriminated by not giving Amini his six year tenure review. Plaintiff Amini says this impaired his ability to correct deficiencies that might have been noted in this review. Plaintiff Amini also says that Dr. Rimm discriminated against him and others in pay, conditions of employment and in reviews. Amini says Dr.

---

1. Plaintiff voluntarily dropped claim III from his complaint. Count III alleged discrimination based on age in violation of 29 U.S.C. §§ 621–634 and O.R.C. § 4112.99. Plaintiff's Title VII claim based on race previously was dismissed as was plaintiff's antitrust claim alleging violations of 15 U.S.C. § 1. Plaintiff's claim involving 42 U.S.C. § 1981 also was dismissed.

2. Dr. Rimm sponsored the appeal.

Rimm's consciousness of Amini's race, national origin, and religion caused this conduct. He says Dr. Rimm's discrimination was reflected in derogatory statements concerning foreigners's employment by the Epidemiology Department and by the school of medicine.

## II

Pursuant to Fed.R.Civ.P. 56, summary judgment shall be rendered if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, the court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998).

## III

Title VII of the 1964 Civil Rights Act states that it shall be an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion ... or national origin" or "to limit, segregate, or classify his employees or applications for employment in any way which would deprive or tend to deprive any individ-

ual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... religion ... or national origin." 42 U.S.C. § 2000e–2(a). *See Kasuri v. St. Elizabeth Hosp. Med. Ctr.*, 897 F.2d 845, 848–51 (6th Cir.1990) (hospital did not discriminate against doctor denied residency allegedly on basis of Indian national origin and was entitled to dismissal of her Title VII claim).

 Under Title VII a plaintiff may prove discrimination through direct or circumstantial evidence of an employer's discriminatory conduct.[3] Absent direct evidence of discriminatory intent and conduct a plaintiff must establish his case under the framework given by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Establishment of a *prima facie* case creates a presumption of discrimination.

 In order to establish a *prima facie* case of discrimination under *McDonnell Douglas*, a plaintiff must prove: (1) plaintiff was a member of a protected class; (2) he was subject to an unfavorable employment decision; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class. *Id.* at 802, 93 S.Ct. 1817. To prove the fourth element, a plaintiff may show that comparable employees were treated more favorably. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–3 (6th Cir. 1992). "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Id.* at 582 (*citing Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir.1988)).

 Initially, the burden rests with the plaintiff to establish the *prima facie* case. Once he has done so the burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its behavior. The employer must articulate a reason for its action which must be legally sufficient to justify a judgment for the defendant if it were believed by the trier of fact.

---

**3.** "Direct evidence" is evidence which if believed, proves the fact without inference or pre-

sumption. *Burns v. Gadsden State Comm. College*, 908 F.2d 1512 (11th Cir.1990).

*Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). After the defendant has established evidence of such a reason the plaintiff must then demonstrate that the reason articulated by the employer is a "pretext" for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at 513, 113 S.Ct. 2742. Alternatively, the plaintiff can show that the given reason is insufficient to explain the adverse behavior of the defendant. *Chappel v. GTE Prods. Corp.,* 803 F.2d 261, 266 (6th Cir. 1986), cert. denied, 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987).

### IV

Plaintiff Dr. Amini does not show direct evidence of discrimination.[4] Due to the absence of direct evidence in the case, Amini must prove his *prima facie* case of discrimination with circumstantial evidence.

Amini, being both Iranian-born and a practicing Muslim, has demonstrated that he is a member of a protected class. He satisfies the first requirement under *McDonnell Douglas.* He also shows evidence meeting the third prong of *McDonnell Douglas.* Defendant Case Western denied Amini tenure and before that did not comply with its normal tenure process. Both parties concede that denial of tenure is an adverse employment action.

The parties dispute the second prong of the *McDonnell Douglas* test whether Amini was qualified to receive tenure. Plaintiff argues that he was qualified and Rimm discriminated against him based upon religion and race.

■ Plaintiff Amini shows evidence that, if believed, would support a jury's finding that he was qualified for tenure. He published in over 50 peer-reviewed publications. He had very high student evaluations. He received plaudits from colleagues. He had media coverage for his research, and has been invited to speak at conferences in his field both in the United States and overseas. The evidence shows that Amini's research, publications, collaborative work, and service were adequate for tenure, in the opinion of outside reviewers.

In his applications for promotion to associate professor and for tenure, Amini was criticized for not developing independent research and for failing to establish a national reputation in the field of biostatistics.

A reasonable fact-finder could find that Amini was qualified for the position of a tenured professor and that he was denied such a position because of discrimination by Dr. Rimm.

Finally, a jury could reasonably find that non-protected employees were treated differently despite being similarly situated. Drs. Paul Jones, Sara Debanne, and Nahida Gordan are among those whose treatment is compared. While these tenure track employees were considered for tenure by different committees, deans, and advisory committees, in different years, the Court finds they remain similarly situated. *See Mitchell,* 964 F.2d at 583.

Amini also compares himself with Drs. Sana Loue, Sylvan Green, Mendel Singer, and Deborah Glueck. The defendant alleges that these individuals are not "similarly situated." Dr. Loue has never been reviewed for tenure. Dr. Singer is not on the tenure track. Dr. Glueck has never worked for the university. Dr. Green received tenure with his initial appointment at the university.

Jones, Debanne, and Gordon are all non–Muslims. All three hold a Ph.D. in statistics similar to the plaintiff. All three, with similar or fewer qualifications, were awarded tenure under the same standards of review for tenure. Drs. Loue, Green, and Singer were all hired, promoted, and more generously

---

**4.** In *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241 (6th Cir.1995), the Sixth Circuit found that racist comments made by employer's owner and manager were "direct evidence" that black former employee's firing may have been racially motivated. *Id.* at 1249. As explained, Rimm's reported comments do not rise to the same level as the comments made there and are not direct evidence of discrimination.

compensated with fewer qualifications than the plaintiff. None were criticized for participation in activities for which the plaintiff was condemned.

A jury could reasonably find the individuals with whom Amini compares himself to be "similarly situated."[5] A material factual issue exists as to whether or not these comparable individuals were treated in a manner more favorable than Amini because of national origin and religion. The Court finds that a material issue of fact is presented upon which a jury could, in construing the evidence in a light most favorable to Dr. Amini, find that he was treated differently than those who were "similarly situated."

## V

 The Defendant contends that even if Amini could make out a *prima facie* case of discrimination based on national origin and religion, the university had legitimate, non-discriminatory reasons for deciding not to award tenure. The university claims that Amini failed to establish a continuing program of original research. The defendant questions Amini's level of expertise and commitment to continuing the development of his competence. Plaintiff Amini contends that until Dr. Rimm became a member of the faculty, he met all university expectations. Plaintiff Amini says Defendant Case Western's response is a pretext for its discriminatory practices.

Plaintiff Amini shows evidence that Defendant Case Western's proffered justification is a pretext. Principally, Amini shows evidence that Dr. Rimm gave preference to American-born or Jewish employees. Plaintiff says Rimm showed this in hiring, salary, promotion, and tenure. Plaintiff Amini also gives evidence that Rimm ordered him to "Speak English!" in a public forum. A material issue exists as to whether Defendant Case Western's proffered reasons are pretextual.

## VI

The Court concludes that material issues of fact exist precluding summary judgment in this case. For the reasons outlined above, the Court denies defendant's motion for summary judgment.

IT IS SO ORDERED.

---

5. The Court does not find CWRU's argument that the individuals are not comparable because they were reviewed by different committees, deans and presidential advisory committees persuasive.